**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 24, 2014

LETTER TO COUNSEL

      RE:    *Nyree Nikia Wallace v. Commissioner, Social Security Administration*;
               Civil No. SAG-14-1003

Dear Ms. Wallace and Counsel:

      On April 1, 2014, Plaintiff Nyree Nikia Wallace petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits. (ECF No. 1). I have considered Plaintiff's Motion for Extension of Time, Motion for Summary Judgment, and Request for Hearing, (ECF Nos. 16, 20),[1] and Defendant's Motion for Summary Judgment, (ECF No. 18). Because I find that no hearing is necessary, Plaintiff's Request for Hearing is denied. *See* Local Rule 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant Plaintiff's Motion for Extension of Time, deny Plaintiff's Motion for Summary Judgment, and grant the Commissioner's Motion for Summary Judgment. This letter explains my rationale.

      Ms. Wallace protectively filed a claim for Disability Insurance Benefits ("DIB") on October 20, 2010. (Tr. 207–08). She initially alleged a disability onset date of June 5, 2009, which she later amended to a closed period of disability from June 1, 2010 to July 2, 2012. (Tr. 207, 59). Her claims were denied initially and on reconsideration. (Tr. 125–30, 136–38). A hearing was held on February 6, 2013, before an Administrative Law Judge ("ALJ"). (Tr. 38–90). Following the hearing, the ALJ determined that Ms. Wallace was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 17–33). The Appeals Council denied Ms. Wallace's request for review, (Tr. 1–5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

---

[1] On September 9, 2014, Ms. Wallace filed a letter (1) requesting an extension of time in which to file her Motion for Summary Judgment, which was due on August 5, 2014, and (2) setting forth her arguments in support of her claim. The Commissioner did not oppose her request for an extension of time, which is granted, and the Court has carefully considered the substance of Ms. Wallace's letter. With her letter, Ms. Wallace submitted evidence of medical treatment she has received since her hearing. However, that evidence is not germane to the relevant timeframe, it could not have changed the outcome of the ALJ's decision, and thus, it cannot be considered with respect to this appeal. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Those more recent records could only be considered if Ms. Wallace files a new application for benefits.

*Nyree Nikia Wallace v. Commissioner, Social Security Administration*
Civil No. SAG-14-1003
November 24, 2014
Page 2

The ALJ found that Ms. Wallace suffered from the severe impairments of degenerative disc disease, obesity, borderline intellectual functioning, and depression. (Tr. 22). Despite these impairments, the ALJ determined that Ms. Wallace retained the residual functional capacity ("RFC") to "perform medium work as defined in 20 CFR 404.1567(c) except: Because of her mental impairments, she can perform jobs consisting of unskilled, routine and repetitive tasks." (Tr. 25). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Wallace could perform jobs existing in significant numbers in the national economy and that therefore she was not disabled. (Tr. 31–32).

Ms. Wallace has not filed a formal motion in support of her appeal, although she submitted two letters to the Court describing her impairments and contending that the Commissioner has denied her applications to avoid paying benefits from the date her application was filed in 2010. (ECF Nos. 16, 20). I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. Despite major inconsistencies on the record concerning Ms. Wallace's work history, the ALJ ruled in Ms. Wallace's favor at Step One and determined that she has not engaged in substantial gainful activity during the closed period of alleged disability from June 1, 2010 to July 2, 2012. (Tr. 22); *see* 20 C.F.R. §404.1520(a)(4)(i). At Step Two, the ALJ then considered the severity of each of the impairments that Ms. Wallace claimed prevented her from working. *See* 20 C.F.R. § 404.1520(a)(4)(ii). As noted above, the ALJ concluded that several of Ms. Wallace's impairments were severe. (Tr. 22–23). After finding at least one of Ms. Wallace's impairments severe, the ALJ continued with the sequential evaluation and considered, at Step Four, whether Ms. Wallace's impairments limited her ability to work. Although the ALJ's Step Four analysis of Ms. Wallace's non-severe impairments was arguably cursory, after a thorough evaluation of the record, I find no evidence that Ms. Wallace's non-severe impairments—carpel tunnel syndrome, hypertension, and history of right knee arthroscopy—resulted in any functional limitations. Accordingly, I find no basis for remand.

At Step Three, the ALJ determined that Ms. Wallace's impairments did not meet the specific requirements of, or medically equal the criteria of, any Listings. (Tr. 23–25). The ALJ considered the specific requirements of Listing 1.04, which pertains to disorders of the spine, Listing 12.05, which pertains to intellectual disability, and Listing 12.06, which pertains to anxiety related disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.04, 12.05, 12.06. I have carefully reviewed the record, and I agree that no Listings are met.

At Step Four, the ALJ assessed Ms. Wallace's RFC. He first summarized Ms. Wallace's allegations and testimony about her impairments and their effects. The ALJ explained that

although Ms. Wallace's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Ms. Wallace's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 23). *See Craig*, 76 F.3d at 594 (setting forth a two-part test for evaluating a claimant's subjective complaints). In evaluating Ms. Wallace's credibility, the ALJ properly considered the relevant factors set forth in Social Security regulations. *See* 20 C.F.R. §§ 404.1529(c), 404.1529(d)(4). Specifically, the ALJ discussed Ms. Wallace's activities of daily living, the inconsistencies in her statements about her work history, the notes and objective clinical evidence documenting Ms. Wallace's medical treatment, and the fact that no aggravating factors occurred around her amended disability onset date. (Tr. 26–30).

As part of Step Four, the ALJ also evaluated the medical opinions on the record. (Tr. 30–31). The Fourth Circuit set forth parameters for evaluating medical opinions of treating physicians in *Craig*, 76 F.3d at 590, which were later refined by amendments to 20 C.F.R. § 404.1527. *See Pitman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001). When a medical opinion is from a "treating source," it is given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). If a treating source's medical opinion is not assigned controlling weight, however, in determining the weight to give the opinion, the ALJ should consider: (1) the length of the treatment relationship and its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Ms. Wallace's treating obstetrician, Dr. Richman, opined that there was no medical reason supporting a determination of disability. (Tr. 400). The ALJ assigned "partial weight" to Dr. Richman's opinion in spite of the fact that it was on an issue reserved to the Commissioner, *see* 20 C.F.R. § 404.1504, because it undermined Ms. Wallace's claims concerning the limiting effects of her impairments. (Tr. 30). Dr. Trent Mims and Dr. Thakor, two of Ms. Wallace's treating physicians both opined that Ms. Wallace was subject to exertional and postural limitations. (Tr. 622–23, 642). The ALJ assigned "little weight" to the limitations identified by Dr. Trent Mims and Dr. Thakor because they were not supported by the objective medical evidence, Ms. Wallace's statements that she was working on a part-time basis, and her activities of daily living ("ADLs"). (Tr. 31–32). I have evaluated the opinions of Ms. Wallace's treating physicians and the evidence cited by the ALJ and I find that the ALJ provided substantial evidence supporting his assignments of weight to the opinions of Ms. Wallace's treating physicians.

State agency consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2). When an ALJ considers the findings of a State agency consultant, the ALJ must evaluate the findings using the same factors applicable to other medical opinion evidence, including the specialty and expertise of the consultant, the supporting evidence in the case record, supporting explanations the consultant provides, and any other relevant factors. *Id.* State agency psychological consultant Dr. Perrot opined that Ms. Wallace had mild restrictions in ADLs and maintaining social function and moderate difficulties in maintaining concentration,

persistence, and pace. (Tr. 98–99). The ALJ assigned "great weight" to Dr. Perrot's opinion because it was consistent with her ADLs and was not contradicted by any other evidence on the record—because Ms. Wallace was never evaluated or treated by a mental health professional. (Tr. 30). Dr. McDonald, a consultative examiner, opined that Ms. Wallace is limited to simple and rote tasks. (Tr. 658). The ALJ assigned Dr. McDonald's opinion "partial weight" to the extent he found it consistent with cognitive testing. (Tr. 30). However, the ALJ assigned "little weight" to the portion of Dr. McDonald's opinion that found Ms. Wallace

> would require close supervision prompting and reminding . . . as it is inconsistent with the claimant's level of functioning throughout the record. The claimant independently cares for her three children. She is also able to help them with their homework and help her children's grandmother mother [sic] with her bank account. The claimant also alleged that she does not need reminders for medications, personal care or household work. Furthermore, prior to the alleged disability onset date, the claimant functioned as [a] certified nurse's aide and medical assistant giving medications and drawing blood.

*Id.* I find that the ALJ provided substantial evidence supporting his assignments of weight to the opinions of the State agency consultants. The ALJ's assessment of Ms. Wallace's RFC was consistent with his evaluation of her credibility and his evaluation of the record. I have carefully reviewed the record and I find that the ALJ's RFC assessment, by limiting Ms. Wallace to unskilled work with routine and repetitive tasks, took into account the limitations that were readily established by the evidence.

Finally, at Step Four, the ALJ took testimony from the VE regarding whether Ms. Wallace could perform her past relevant work and determined that she could not. (Tr. 31, 83–84). At Step Five, the ALJ next considered the impact of Ms. Wallace's age and level of education on her ability to adjust to other work. The ALJ posed a series of hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 83–87). Ultimately, the ALJ determined that Ms. Wallace's RFC matched one of the hypotheticals he had posed. The VE cited two jobs in response to that hypothetical, and the ALJ relied on that VE testimony in concluding that Ms. Wallace is capable of adjusting to work that exists in significant numbers in the national economy. (Tr. 31–32). The ALJ's Step Five determination, therefore, was supported by substantial evidence.

For the reasons set forth herein, Ms. Wallace's Motion for Summary Judgment (ECF No. 16) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is GRANTED. The clerk is directed to CLOSE this case.

*Nyree Nikia Wallace v. Commissioner, Social Security Administration*
Civil No. SAG-14-1003
November 24, 2014
Page 5

      Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                Sincerely yours,

                /s/

                Stephanie A. Gallagher
                United States Magistrate Judge